STATE *vs.* DAVID PENDER, *et al.*

1. The power of the Legislature to confer criminal jurisdiction on the Chief Magistrates of towns and cities, stands on a different footing from the power to confer civil jurisdiction.

2. By the 4th section of Article IV of the Constitution, the Judicial power of the State is vested in a Court for the trial of impeachments, a Supreme Court, Superior Courts, and Special Courts; the jurisdiction of Special Courts is defined by section 19 of the same Article.

3. The acts of 1868-'69, chap. 178, and chap. 2 of the particular act, sec. 1, page 432, gives (among other officers enumerated) to Mayors, Superintendants of Police or other chief officers of cities and towns, power "to cause to be kept all laws made for the preservation of the public peace," &c.; and chap. 3, sec 1, of the same act gives them power "to issue process for the apprehension of persons charged with any offence, and to execute the powers and duties conferred in this chapter," but no final jurisdiction is given to them by any part of said act.

4. The power thus given to the chief officers of towns, &c., can be supported by the authority given the Legislature by the Constitution, to create Special Courts for cities and towns, and it can be no objection to the act in question, that it does not authorize these officers to *try* persons charged with misdemeanors, but simply to arrest and bind them over.

5.   There is nothing in the Constitution taken altogether, prohibiting the Legislature from giving to cities and towns the power of selecting and designating their chief officers.

Cases of *City of Wilmington* v. *Davis*, 63 N. C. R., 582,   *Town of Edenton* v. *Wool*, 65 N. C. R., 379, cited and approved.

This was a motion to set aside and vacate a judgment rendered against the defendants as bail of George A. Smith, heard before Moore, Judge, at Fall Term, 1871, of Edgecombe Superior Court.

The facts stated in the record are as follows:

John Norfleet was Magistrate of Police of the town of Tarboro', Edgecombe county, and as such issued the following warrant, viz:

*State* v. *George A. Smith.*

STATE OF NORTH CAROLINA,

*To any Constable or other officer of said County*—GREETING:

WHEREAS, Windsor Bilby hath complained on oath before me, a Magistrate of Police for the town of Tarboro', that George A. Smith did, on the 4th day of October, A. D. 1870, at and in the county and town aforesaid, violently assault the said Bilby, by shooting at him with a pistol, contrary to law and against the peace and dignity of the State.   You are, therefore, commanded to arrest the said Smith and have him before me, or some other justice of the peace to answer said complaint and be otherwise dealt with according to law.

(Signed)        JOHN NORFLEET, M. of P. [SEAL.]

Upon said warrant is the following endorsement:

*State* v. *George A. Smith:*

The defendant is this day brought before me, and it appear-

ing that he is guilty (from the evidence) ; it is adjudged that he be recognized in the sum of $500, with good sureties, for his appearance at the next Term of the Superior Court for Edgcombe county, &c.

JOHN NORFLEET,

Magistrate of Police for Town of Tarboro.

The said Smith gave bond in the sum required for his appearance at the Superior Court for Edgecombe county with the defendants as sureties. At said Term of the Court the said Smith failed to appear, and judgment *nisi* was entered against him and his sureties. A *scire facias* was issued against them and at February Term 1871, the judgment was made absolute. At the subsequent Term September 1871, a motion was made to set aside and vacate said judgment and the Court being of opinion that the said "Norfleet had no jurisdiction of criminal matters to any extent, and that the warrant issued by him for the arrest of the said Smith, as well as all the subsequent proceedings had before him were void," adjudged, that the said judgment be set aside and vacated, from which judgment the Solicitor for the State prayed an appeal to the Supreme Court.

*Attorney General* for the State.
*Bridgers* & *Bridgers* for defendants.

RODMAN, J. The power of the Legislature to confer criminal jurisdiction on the chief magistrates of cities and towns, stands on a different footing from their power to confer civil jurisdiction on such officers. The cases of *the city of Wilming ton* v. *Davis,* 63 *N. C.,* 582, *and the town of Edenton* v. *Wool,* 65 *N. C.,* 379, which relate only to the civil jurisdiction, have therefore no application to the present case.

By the Constitution (Art. IV, sec. 4,) the judicial power of the State is vested in "a Court for the trial of impeachments,

a Supreme Court, Superior Courts, Courts of Justices of the Peace, *and Special Courts.*"

What Special Courts are intended to be, is defined by sec. 19 of the same Art., "The General Assembly shall provide *for the establishment* of Special Courts for the trial of misdemeanors, in cities and towns where the same may be necessary."

The Act of 1868–'69, ch. 178 of the Acts, ch. 2, of the particular Act, sec. 1, p. 432, enumerates the officers who "shall have power to cause to be kept all laws made for the preservation of the public peace," and to require security to keep the peace, and along with the Judges of all the Courts, including the Judges of the Special Courts then existing, or which might afterwards be created, confers these powers on the " mayors, superintendents of police, or other chief officer of all cities and towns in this State." *Ch.* 3, sec. 1, of the same Act, enumerates the chief officers of cities and towns among the magistrates who may " issue process for the apprehension of persons charged with any offence, and execute the powers and duties conferred in this chapter." Other sections of this chapter relate to the powers and duties of such chief officers ; but no final jurisdiction to try offenders, such as is given to Justices of the Peace by chapter IV, is anywhere given to them.

The magistrate who issued the process under which the supposed offender in this case was arrested, is the chief officer of the town of Tarboro, and his official title is Magistrate of Police. Private Acts 1821–'32, ch. 66, p. 65.

The question, therefore, is whether the powers granted to the chief officers of the towns by the Acts of 1868–'69, ch. 178, can be supported as an exercise of the legislative power to create Special Courts for the trial of misdemeanors in cities and towns.

It can be no objection to the Act in question, that it does not authorize these officers to try persons charged with misdemean-

ors, but only to arrest them and bind them over to the Superior Court. As arrest must necessarily precede trial, the power to try offenders must include the power to arrest them. If the Legislature has not granted in full the power which it had a right to grant, that is no reason why their grant of a part of it shall fail. It is said, that conceding the power of the Legislature to give to the chief officers of the towns the powers of Special Courts, the power must necessarily be limited to the trial of misdemeanors, and consequently to arrest for misdemeanors, the power to arrest and bind over being co-extensive only with the possibility of the power to try; and that thus the anomaly will be presented, of officers authorized to arrest small offenders, but not felons. This objection assumes that the chief officer of a town could not constitutionally be given the power to arrest and bind over felons. The Act of 1868–69 gives them that power in the case of felons; and if the Legislature can give them such power in minor cases, we do not see why it cannot in graver ones, because the arrest and examination of the offender must necessarily precede the determination of the degree of his offence. But that question does not arise in this case, where the offence charged was only a misdemeanor, and is charged to have been committed in the town of Tarboro'. We express no opinion on it.

We are led then to inquire whether there is anything in the Constitution prescribing the manner in which Judges of Special Courts shall be designated to office, inconsistent with the manner in which the chief officers of towns are designated, which is invariably, or usually, by the votes of the inhabitants of the towns. Because if there is anything in the Constitution requiring a mode of designating Judges of Special Courts, inconsistent with their election by the town in which the Court is to sit, it will be conceded that the Legislature would be disabled from granting to the chief officer of a town the powers of an officer, constitutionally required to be designated in a different way from such chief officer. It is sugges-

ted that sec. 10 of Art. III has this effect.    That section is as follows:

"SEC. 10. The Governor shall nominate, and by and with the advice and consent of a majority of the Senators elect, appoint all officers whose offices are established by this Constitution, or which shall be created by law, and whose appointments are not otherwise provided for, and no such officer shall be appointed or elected by the General Assembly."

Does this section include within it Judges of Special Courts, so as to require them necessarily and in all cases to be appointed by the Governor, by and with the advice and consent of the Senate? Because if it does, clearly it disables the Legislature from giving the powers of such Judge to officers deriving office from an election by a town.

It must be admitted that if this section stood alone in the Constitution, unmodified and unexplained by any other, it would be difficult if not impossible, by any fair course of reasoning, to take Judges of Special Courts out of its operation.

But we think it is modified and restricted by Art. IV, sec. 19, which says: "The Legislature shall *provide for the establishment of* Special Courts for the trial of misdemeanors in cities and towns, &c." The words "*provide for the establishment of*," are very wide, and it seems to us that they not only admit of, but that they cannot receive their full and adequate force, without giving them the interpretation, that they authorize the Legislature to establish the Courts in any way that it may think proper; and to give the Judges such powers (not exceeding the trial of misdemeanors), and to provide for them and the other officers of the Court, (if any) such mode of election, and such terms and emoluments of office as it may think proper. *Possibly,* it cannot give the absolute appointment of officers to the Governor, or their election to the General Assembly; we say this, only to avoid the supposition that we mean to include those modes of election; those modes may be prohibited by sec. 10 of Art. III, but we express no opinion on that point.

A Court cannot be established without either creating the office of Judge of it, or attaching the duties of such office to some other office already in being; and it seems to be a reasonable intendment that to establish a Court includes an order as to the mode of selecting the Judge, his jurisdiction, term of office, and all the other incidents of the Court. If this be so, then the Act of the Legislature in question was within its power.

Few Constitutions are entirely homogeneous in all their parts. That the Constitution of 1868 is not so, cannot be surprising to any one acquainted with its history. It is the duty of the Courts of the State, and one which this Court has endeavored faithfully and impartially to perform, to give to the Constitution such an interpretation as will harmonize its parts without violating any leading idea in it as a whole. Between the two sections which we have had under consideration, there is at first sight, an appearance of the impress of different ideas. The draughtsman of Article III probably did not have in his mind that Special Courts could be established.

From the language of Sec. 19 of Art. IV, (and it is by its language only that we can be guided) we think the leading idea in that was to give the Legislature full power over the establishment of Special Courts, thus making it an exception to the general provision in sec. 10 of Art. III. This is necessary, in order to give to the words their *full and adequate* force.

Again, it is suggested that sec. 31 of Art. IV, which provides that all vacancies in offices provided for by that article of the Constitution, shall be filled by the appointment of the Governor, unless otherwise provided for, &c., is inconsistent with the proposition, that the Legislature may confer the power of Judge of a Special Court, on an officer, the vacancy in whose office the Governor is not authorized to fill, and which vacancy, it would be somewhat absurd to think, that he might be authorized to fill.

We think this suggestion is of less weight than the one before considered. We think that this section was not intended to include the office of Judge of a Special Court, which was a thing not within the mind of the Convention at that time. After what we have already said, it is unnecessary to elaborate this point.

We have thus reviewed every suggestion which has been made, and every argument which has occurred to us, against the Act of 1868–'69, as a valid exercise of the legislative power; and we have been unable to find any solid reason why that Act should not be sustained.

We think that the Legislature had the power to grant to the chief officers of cities and towns, all the jurisdiction which they could grant to Judges of Special Courts. At present it has done so partially only. Whether it will hereafter increase their jurisdiction is for it alone.

There was error in the judgment below, which is accordingly reversed, and the case is remanded to the Superior Court of Edgecombe to be proceeded in according to law.

PER CURIAM.                    Judgment reversed.