THE PEOPLE of the STATE OF NORTH CAROLINA, on the relation of JOHN M. CLOUD *v.* THOMAS J. WILSON.

Where A was elected Judge of the Superior Court and declined to accept the office and never qualified : *Held*, that there was a vacancy within the meaning of SEC. 31, ART. IV of the Constitution, and the Governor had the power to fill such vacancy by appointing a successor.

The General Assembly has no power to order an election to fill such vacancy, and any law for that purpose is unconstitutional and void.

The word "until the next regular election," in SEC. 31, ART. IV, of the Constitution, mean until the next regular election for the office in which a vacancy has occurred.

READE, J., *dissenting.*

(*Clark* v. *Stanly*, 66 N. N. C. Rep. 59 : *People* v. *Bledsoe*, 68 N. C. Rep. 457, cited and approved.)

CIVIL ACTION, in the nature of a *quo warranto*, contesting the right to the office of Judge of the 8th Judicial District, tried by consent by *Kerr, J.*, at Fall Term, 1874, of ORANGE Superior Court, having been removed by consent from the Superior Court of Yadkin county.

The following are substantially the facts submitted to his Honor, and upon which the judgment appealed from, was founded.

At an election held in April, 1868, D. H. Starbuck was elected to the office of Judge of the 8th Judicial District, he

being at and before his said election, the District Attorney of the United States, for the District of North Carolina, and in the active discharge of the duties of his said office; and that he so continued until the 24th day of August, 1867, when he formally, by letter to the Governor of the State, declined to accept the said office of Judge.

On the 1st day of July, 1868, the Supreme Court of North Carolina, under the former Constitution, adjourned; and that on the same day, Hon. R. M. Pearson, Chief Justice elect, and Hon. E. G. Reade and Hon. R. P. Dick, Associate Justices, elected at the election in April, 1868, after having been qualified by taking the oaths of office, proceeded to superintend the allotment and classification of the persons elected as Judges of the various Judicial Districts of the State; and in said allotment, D. H. Starbuck, the Judge elect for the 8th District, was assigned a term of eight years.

On the said 1st day of July, 1868, when said classification was made, the Hon. W. B. Rodman and the Hon. Thomas Settle, had qualified as Associate Justices of the Supreme Court of North Carolina, by taking the oath of office, but were not present at the said classification. That at the time of the said classification and allotment of terms, D. H. Starbuck had not been commissioned as a Judge, nor had he accepted the said office, and never was a Judge of the Superior Court.

After the letter of Starbuck was received by the Governor, and he formally declined to accept the office of Judge, his Excellency, W. W. Holden, Governor of the State of North Carolina, appointed and commissioned the relator, the said J. M. Cloud, a Judge of the 8th Judicial District; in said commission, directing the relator to enter upon said office and discharge all the duties thereof until his successor shall be duly elected according to the Constitution and laws of the State. That the relator entered upon the discharge of the duties of said office, after being duly qualified, and continued in charge thereof, till the defendant, T. J. Wilson, assumed the execution of the duties of said office, against the relator's consent.

The defendant, the said T. J. Wilson, was duly elected, at a regular election, held on the first Thursday of August, A. D. 1874, Judge of the said 8th Judicial District, in pursuance of an Act of the General Assembly of North Carolina, entitled "An Act concerning the election of certain officers," ratified 13th day of February, 1874; and that he was commissioned by his Excellency, C. H. Brogden, Governor of the State, as a Judge of the Superior Court of the 8th Judicial District, on the 22d day of August, A. D. 1874, and that day was qualified as Judge, by taking the oaths of office, and since that time has been in the active discharge of the official duties of Judge in and for said District.

His Honor being of opinion with the defendant, adjudged that the relator, John M. Cloud, was not entitled to the office of Judge of the 8th Judicial District, as claimed in his complaint, and that T. J. Wilson, having been duly elected under said act of the General Assembly, chapter 118, of the laws of 1873–'74, and commissioned by the Governor, was the lawful and rightful Judge of the said 8th Judicial District, and entitled to hold the office.

From this judgment, the relator appealed.

*McCorkle* and *Batchelor*, for appellant.
*Graves* and *J. W. Graham*, contra.

PEARSON, C. J.   D. H. Starbuck, at the first election after the adoption of the Constitution, was elected Judge of the 8th Judicial District; he did not accept the office and declined to qualify. Thereupon the Governor appointed the relator to fill the vacancy. The question is, was this a vacancy which the Governor had power to fill? One of these conclusions must be adopted:

1. On the refusal of Mr. Starbuck to accept, the General Assembly had power to order a special election for a Judge of that district; in the absence of a grant of this power to the General Assembly by the Constitution, this conclusion must be rejected.

2. This is *casus omissus* in the Constitution ; and that instrument is so defective as to have provided no way to fill the office, so that the administration of the law in a judicial district must stop, should it so happen that the person elected Judge should decline to accept, or dies before he qualifies and takes out his commission. This conclusion must be rejected.

3. We adopt the conclusion, that although Mr. Starbuck declined to accept and did not qualify and take his commission, a vacancy did occur in the office. By an unexpected event there was no one to fill the office; thus for all practical purposes the office was vacant and it can make no difference whether Mr. Starbuck declined before, or the moment after he qualified, or whether he was eligible to the office; for taking it in either of the three ways, there was the same mischief, no one to administer the laws in that judicial district, and to avoid this detriment to the public welfare, the power to fill vacancies is conferred upon the Governor. The Act of 1873–'74, chap. 118, directs an election for Judge in the 8th Judicial District, on the 1st Thursday in August, 1874, which was a regular election day for members of Congress, members of the General Assembly, and some other State officers, and was also regular election day, for the Judges of the Superior Court, belonging to the short term.

Under this statute, Mr. Wilson was elected by a vote of the people of the 8th Judicial District. He qualified and in spite of the protestation of the relator, took possession of the office. The question is, had the General Assembly power to order the election ? This depends upon the construction of Art. 4, sec- 31 : " All vacancies occurring in the offices provided for by this article, shall be filled by the appointment of the Governor unless otherwise provided for, and the appointees shall hold their places until the next regular election."

It is settled that the words " otherwise provided for " mean otherwise provided for by the Constitution. *Clark* v. *Stanly,* 66 N. C. Rep. 59. *People* v. *Bledsoe,* 66 N. C. Rep. 457.

The question now is, what is the meaning of the words

" until the next regular election ?"    Taken by themselves they are too indefinite to have any particular meaning; as they cannot stand alone, it is the province of the Court to find by the rules of construction, other words to support them, that is, to find a definite meaning.

I. It is suggested the addition of the words, "for members of the General Assembly," would fix a definite meaning. That is true. But what warrant is there for adding these words? We know of no rule of construction to justify it; there is no association of ideas by which the election of *judicial* officers is connected with the election of members of the General Assembly. There is as much, if not more reason for making the sentence read, " until the next regular election for Justices of the Peace," that being a judicial office. It is unnecessary to say more upon this view of the question. Indeed after the consideration of the matter, which the appointment of Judge Cloud gave rise to, in connection with election for members of the General Assembly in 1872, the position has by general consent been abandoned as untenable, and was not pressed in the argument before this Court.

II. It is suggested that the addition of the words " for Judges of the Superior Court," will fix a definite meaning. This seems to have been the construction adopted by the General Assembly, in the Act above referred to. It is obvious that the addition of these words, so as to make the sentence read, " until the next regular election for Judges of the Superior Court," does not meet the whole question. For the section under consideration, embraces all vacancies in the judicial department, except those otherwise provided for by the Constitution, and includes the Justices of the Supreme Court, Clerks of the Superior Court and Solicitors, as much as the Judges of the Superior Court; so to make the sentence full, it must be made to read, " until the next regular election for Justices of the Supreme Court, in respect to vacancies occurring in the office of Chief Justice or any one of the Associate Justices, for Clerks of the Superior Court, in respect to a vacancy oc-

curring in the office of a Superior Court Clerk, and for Solicitor in respect to vacancies occurring in respect to the office of a Solicitor, and for Judges of the Superior Court, in respect to vacancies occurring in the office of a Superior Court Judge."

It would seems this was the construction adopted by the General Assembly, in respect to Justices of the Supreme Court, from the omission to provide for the election of two Associate Justices of the Supreme Court, to take the place of two who now hold the office under the appointment of the Governor, to fill vacancies. We think this construction the true one in respect to Justices of the Supreme Court, Clerks of the Superior Court and Solicitors, because elections are to be held at *one time* for *all* of the members of the Supreme Court, and so as to the Clerks and Solicitors respectively. But in regard to the election of the Judges of the Superior Court this is not the case. There is an other section of Art. IV⁴ which raises the question and calls for a change in the words, which it is suggested should be added. Section 26 : " The Judges of the Superior Courts elected at the first election, under this Constitution, shall after their election, under the superintendence of the Justices of the Supreme Court, be divided by lot into *two equal classes*, one of which shall hold office for four years, and the other for eight years." Here is an express provision by which the Judges of the Superior Courts are divided into two equal classes, one class to be elected every four years. Whether this provision will effect any important purpose, it is not for us to say. It is ordained, and it is the duty of the Court to give effect to it, and to see that it is not departed from or evaded. No construction of the Constitution can be sound which defeats an *express provision* of that instrument : such is the effect of the construction contended for. We have eight of the Judges, instead of six, elected at one time, and may have nine or ten, or the whole twelve, according to the result of accidents. To preserve these two equal classes, and to have an election for six of the Judges of the Superior Court, held every four years, it is necessary to modify

the additional words suggested, so as to make the section read, "Until the next regular election for Judges of the class in which a vacancy has occurred."

This construction, which we adopt in reference to all judicial officers, may be expressed by the use of a very short ellipsis, so as to make the sentence read, "The appointees shall hold their places until the next regular election *for the office* in which a vacancy has occurred." This construction makes everything fit—there is no jar or disturbance of any part of the instrument.

In our case, the office which had become vacant, belongs to the second class, to-wit, that of the Judges to whom was allotted a full term. It follows that the regular election for the office is not to be held until 1878, at which time the terms of the Judges of the second class expire, and that the Act of the General Assembly under consideration, which attempts to hasten the time for the election of a Judge of the 8th District, violates the Constitution.

It was urged on the argument, "by this construction the appointee of the Governor may hold office, as in this instance, for many years, whereas the general policy of the Constitution is to have frequent elections." It is "not ours" to conjecture the considerations, which caused a provision by which the appointee to fill the office of Judge in case of a vacancy holds until the next regular election for the office, or, for the want of a provision by which a vacancy in the office of Judge of the Superior Court can be filled, by an election of the people; suffice it, there is no such provision. The term of office for a Judge, elected by the people, is fixed at eight years, and there is no provision, for filling a vacancy for an election. As another objection to this Constitution, it was urged, "other parts of the Constitution, to-wit, sections 30 and 34, of the same article IV., "Judicial Department," in providing for filling vacancies, use the words, "for the unexpired term," and if the words "until the next regular election" are to have the same meaning why are not the same words used? The ob-

11

jection is plausible, but the reply is, the Constitution cannot be held up as a model of precision in language, and the duty of the Court is to declare the meaning, whether it be expressed in one set of words, or in other equivalent words. For illustration, section 30, " in case of a vacancy existing for any cause," &c.; section 34, " when the office shall become vacant," &c., here the same meaning is expressed in different words; so the use of different, equivalent words does not exclude the construction, that the same meaning was intended. But allowing that the change of words is an objection to the construction adopted, it is weighed down by the fact that any other construction would nullify and put at naught, the provision by which the Judges of the Supreme Court are divided into two classes; and by the farther fact, that should a Judge of a district, having at the outset the long term, be elected at the time the Judges of the other class are elected, the question will arise, does this Judge elected out of his class, hold for eight years or only for the unexpired part of the term. If the four year classification is entirely destroyed of the latter, the classification is restored in that instance, but is open to other disturbances occurring by vacancies, and we have the anomaly of a Judge, elected by the people to fill a vacancy, for four years or other less time, which is in conflict with the provision, that the term of office shall be eight years. There is the further objection, the election of a Judge out of his class may come on unexpectedly; as if a Judge out of the class, die or resigns, say twenty days before the regular election for judges of the other class, there will be no reasonable time for making a selection of candidates, but the election must be made or the district will have no Judge. The fact that this contingency was not provided for, shows that it was not the intention to have an election by the people *to fill the vacancy* in the office of Judge. This construction is put beyond all doubt by reference to other parts of the Constitution, by which provision is made in so many words, for the election of other less important officers, if the election comes off within thirty days after the

vacancy, the appointee of the Governor is to hold until the next general election. Art. III. sec. 13. No provision of the kind is made in respect to an election to fill a vacancy for the office of a judge out of his class. Thus we are forced to the conclusion that no election of a judge out of his class was contemplated. We declare our opinion to be, that the defendant, Thomas J. Wilson, is not entitled to the office of Judge of the 8th judicial district, and that the relator, J. M. Cloud, is entitled to the office. There is error. Judgment below reversed. Let judgment be rendered according to this opinion.

READ, J., *Dissenting.* "All vacancies occurring in the offices provided for by this Article of the Constitution, shall be filled by the appointment of the Governor, unless otherwise provided for, and the appointees shall hold their places until the next regular election." Art. 4, sec. 31. The meaning of " next regular election," is the question to be settled.

The adjective "next" is evidently used to qualify " election," so as to make it mean the *first* as distinguished from a remote election. It means the *first election in point of time.* The adjective " regular " is used to qualify " election," so as to distinguish it from some other kind of election. It is therefore necessary to ascertain what are the several kinds of elections designated in the Constitution. There are two and only two kinds of elections designated or contemplated in the Constitution : *regular* elections and *special* elections. Regular elections are those by which the offices are originally and continuously filled, according to " stated and established rules," at " periodical times." *Web. Dict.* Special elections are those by which the offices are filled in cases of accident. The usual election for members of the General Assembly, on the first Thursday in August every two years, is an instance of regular elections. An election to fill a vacancy occasioned by the death of a member, at such time as may be appointed, is an instance of special elections. It is a useful inquiry, why is it that the Governor is allowed to appoint a Judge in any case ? The

people elect members of the General Assembly, whose term is two years, and if a member dies, making a vacancy, the Governor does not fill the vacancy by his appointment, but the people meet again and elect a new member.   And so the people elect a Judge, whose term is eight years, and yet if a Judge dies, making a vacancy, the people do not meet again and elect a new Judge, but the Governor appoints.   Why is this ?   Why is the Governor let in to appoint in one case and not in the other ?

The people are the elective power in both cases, one is just as important as the other, and they will not allow the Governor to appoint in one case for a single day, and yet they do allow him to appoint in the other for years.   The difference is founded on *convenience*, and on that alone.   Members of the General Assembly represent a county or a small district; and it is but a little trouble or expense for the people to make a new election, upon short notice.   And therefore there is no necessity that the Governor should appoint their representatives or any *county* officer; and he is not allowed to do so. But the Constitution provides that all the twelve Superior Court Judges shall be elected, not by a county, not by a district, but by the whole State (unless thereafter altered).   And a special election to fill a vacancy would involve delay to notify the people, to nominate candidates, to canvass their merits, and much expense to hold and certify the election.   And so for *convenience*, the appointment to fill the vacancy was given to the Governor, instead of being reserved by the people.

It is also a useful inquiry : For how long a time would the people be *likely* to part with this important elective power ? As they parted with it temporarily to suit their *convenience*, they would resume it as soon as convenient.   The next inquiry is, is such *convenient* time indicated in the Constitution.   It is the "stated, established, usual period" when the people meet together for the *first* time, after the vacancy occurs, to vote for Judges of the Superior Courts.   Then it is as convenient for them to fill a vacancy resulting from accident, as from the

expiration of a term. And it is just as convenient for them to vote for seven, as for six.

If then we use "regular" in the sense of usual or established election, we have still to determine, what is the usual or established times for elections of Judges by the people. The Constitution provides that twelve Superior Court Judges shall be elected by general ticket, and shall hold their offices for eight years from 1870. That would make the "usual, established," or what is the same, the "regular" elections come off in 1878, 1886, and so on every eight years. But there was a farther provision that one-half the Judges elected at the first election should hold their first terms for only four years; the effect of which was to have an election every four years for six Judges, instead of an election every eight years for twelve Judges, evidently for the purpose of securing a continuous and uniform practice and administration of the law, and at the same time popularizing the system and keeping the Judges and the people close together, with a frequent reminder to the Judges of their responsibility to the people, and a frequent opportunity to the people to make them feel their responsibility. Whether such a policy is wise or unwise, I express no opinion, not because I have none, but because this is not the place to express it. With this policy in view, and in view of the fact that the people are the electors of Judges, are we not to suppose that the Constitution would have so provided that as much as possible of the terms of Judges should result from the popular vote? When it is clearly intended that the Judgeship of a district shall be held eight years under the election of the people, can it be that in case of accident it should be held one year under the election of the people, and seven years under the appointment by the Governor? Why should the accidental vacancy and the appointment by the Governor have any other effect than to fill the office until the legitimate electors can fill it when they come together at the usual or regular time and places of electing Judges, and without the inconvenience of being called together

in a special election ?   Beyond all question, the people are to
elect the Judge, at some future, usual or regular election for
Judges.   There was such regular election in 1874, four years
(six) after the vacancy occurred, and was filled by the appoint-
ment of the plaintiff, and there will be another regular elec-
tion for the same purpose in 1878.   At which of these regular
elections for Judges are the people to be permitted to vote for
a Judge of that district ?   The language is " at the next regu-
lar election."   Does that mean the next regular election in
1874, or does it mean the next, after the next, in 1878 ?   It
certainly was just as *convenient* for them to vote to fill *that*
vacancy at the time when they voted to fill six other vacancies
in 1874, as it can be for them to vote to fill it, when they vote
to fill six other vacancies in 1878.   Nor can the alteration by
statute, since the Constitution, to vote by districts, make any
difference.   It is insisted that we ought to read the Constitu-
tion as if it were " next regular election *for that office*."   If
that addition would not alter the meaning, why make it ?   If
it would alter the meaning, where is the precedent for changing
language to injuriously effect a popular right ?   In whose
favor must doubtful language be construed ?   Not in favor of
the appointing power of the Governor ;  he has no interest in
it ; not in favor of the appointee, for although he has an in-
terest, yet it is subservient to the public, and doubtful language
must be solved in favor of popular rights.   Nothing is better
settled, or more important to be maintained, than that no one
ought to exercise the duties of an office to which his title is
doubtful, and no one rightfully in office ought to exercise a
doubtful power.   The Legislature itself ought not to exercise a
doubtful power.   The Legislature itself ought not to exercise
a doubtful power, and it is upon the supposition that they duly
considered the question of power, and determined it in favor
of its exercise, that the Courts feel themselves bound by their
construction unless in cases *plain* to the contrary.   Every
*doubt* in everything, is solved in favor of popular rights : to

this there is no exception.    Cooley's Cons. Lim. 36, 37, 73, 74, 182, 186.

The Constitution having provided for an election of Superior Court Judges in 1874, and that being the *next* regular election for Judges after the vacancy ; and the people having parted with the right to fill the office only temporarily, and for *convenience*, and it being reasonable and fundamental that the power should be resumed as soon as *convenient*, it would seem to follow, that the election of the defendant in 1874, was proper. An argument of some force, against this view is, that judgeships should be for the longest time, and that a reasonable consideratiod of the interest of the appointee would not call him from his practice for a few months or a few years; and that no good lawyer would accept such appointment.    But an analogy unfavorable to this argument, was the appointment of Judges under the old *regime* by the Governor, until the next General Assembly, which was sometimes only for a few months, and could not exceed two years.    And then the General Assembly resumed the elective power, and sometimes used it with crushing, not to say cruel effect, upon the the appointed, under the idea that the public good, or some other consideration, was paramount.    There is a general idea that, to fill a vacancy, is fill it full, as you would a barrel, so that there is nothing more to do.    That is true, where the electing power to fill the office originally, is the same power that fills the vacancy, as where the people elect a member of the General Assembly, and he dies, and they fill the vacancy.    They fill it full, and there is an end.    But when the appointing power is not the elective power, then it reverts to the elective power as soon as it can be conveniently exercised, unless the contrary clearly appears.    And doubts ought to be solved in favor of the reversion.

It is objected that this construction would disarrange the provision, that the Judges of the Superior Courts are to be divided and kept in two classes, six and six, to be elected every four years : for if eight are elected in 1874, when only four will

be to be elected in 1878. *Non sequitur.* That would be so if the two Judges elected to fill vacancies in terms which end n   78, were elected not only to fill the *vacancies,* but for four years of the *next term.* That would be an enormity for which I remember no precedent, either to appoint or elect an officer not only for the unexpired term, but for one half of the succeeding term. A Senator in Congress is elected for six years ; but if elected to fill a three years' vacancy, he does not fill *that* three years, and three years of the *succeeding* term. So here, when two Judges are elected in 1874, to fill vacancies in terms which expire in 1878, *their* terms expire in 1878. They fill *vacancies,* and not *terms.*

And it is said that if the construction for which I contend, is adopted, i. e. that the Governor is to appoint until the next regular election for Judges of the Superior Court, and then the people are to elect, to fill the remainder of the vacancy— then if the vacancy should happen just before the election, say twenty days, so that no election could be held, the vacancy would remain for four years. *Non sequitur.* The Governor can appoint to fill any vacancy. He could fill the vacancy for twenty days, and then if the people failed to elect, either his appointee would hold over as in *Battle* v. *McIver,* or he could again appoint to fill the vacancy occasioned by the failure of the people to elect.

This construction of " next regular election " would seem to be the true one, if considered without the light of the legislative, executive and popular action, but with the aid of these, there would seem to be no doubt. The Legislature has so construed it to mean the election of 1874. The popular voice so construed it, and the Executive so construed it and commissioned him. If I had doubts I should yield them. It is not pretended that this construction effects the office of any member of this court. It was admitted on the argument that it does not. The regular election for Supreme Court Judges, are every eight and not every four years. There has not been, and there cannot be, any election for any judge of the Su-

preme Court, until 1878. I mentioned it only to exclude the conclusion, that the decision is insensibly biased thereby. I dissent from the decision.

PER CURIAM.                                    Judgment reversed.