State on relation of JOHN G. JONES v. MANLY B. JONES.

*County Commissioners—Powers of.*

If from any cause the newly elected commissioners of a county fail to qualify at the time prescribed by law, the old board, as *de facto* officers, have the power to qualify a county treasurer elect and induct him into office ; or upon his default in filing the required bond, they have the power to declare a vacancy and fill the same by appointment. (See *Buckman* v. *Com'rs, ante,* 121.)

(*Norfleet* v. *Staton,* 73 N. C., 546 ; *Cloud* v. *Wilson,* 72 N. C., 155, c'ted and approved.)

CIVIL ACTION in the nature of a *quo warranto,* tried at Spring Term, 1878, of GRANVILLE Superior Court, before *Seymour, J.*

The case is sufficiently stated by THE CHIEF JUSTICE. Judgment for the defendant, and the plaintiff appealed.

*Messrs. Batchelor* and *Edwards,* for plaintiff.
*Messrs. Merrimon, Fuller & Ashe* and *Venable,* for defendant.

SMITH, C. J.   At the election held in Granville county on Tuesday next after the first Monday in November, 1876, for county officers, the defendant was duly elected county treasurer.   On the 14th day of that month the board of county commissioners met and canvassed the vote of the county, excluding the vote cast at Henderson township.   They ascertained and declared the defendant elected and he was notified ten days previously to appear before the commissioners at their meeting on the first Monday in December, to give his bond and be inducted into office.   The defendant appeared before the commissioners at that meeting, declared his inability to give the required bond, and asked for further time.   This request was granted and he was allowed until the 21st day of the month to prepare and tender it.   At that

date the commissioners met at the court house and the defendant failing to appear, declared a vacancy and proceeded to fill it by appointing the relator county treasurer, who thereupon gave bond, took the prescribed oaths and entered upon his official duties.    Three of the commissioners on the first Monday in January, 1877, at the common jail in which they were imprisoned by order of the superior court judge for contempt in refusing to recount the county vote and include therein the vote cast at Henderson, as they had been commanded to do, undertook a second time to declare the vacancy by default of the defendant, and reappointed the relator, who again qualified and remained in office, performing its duties until ousted therefrom by the defendant. On the second of May the commissioners made the recount and their successors ascertained to be elected at once qualified, recanvassed the county vote and declared the defendant upon the full vote to be elected.    The defendant gave bond and took possession of the office on the fifth day of June following.

The only matter in controversy is as to the legal effect of the action of the two boards of commissioners upon the title of the office, which is claimed by the respective parties to the action.    Had the old board the right at their adjourned meeting in December, on default of the defendant, to declare and fill the vacancy by the appointment of the relator?    Or was their action illegal and void so that the new board upon a recanvass of the full vote in May, and also ascertaining the same result, the election of the defendant, were authorized to admit him to office as if no appointment had been made?    Two questions are thus presented for us to consider and decide :

1.  Had the former commissioners the right to make the appointment?

2.  If so, could they extend the time for preparing and

tendering the defendant's bond, and act upon his default at the adjourned meeting in December?

In arriving at a satisfactory solution of these enquiries, an examination of the statutory provisions on the subject becomes necessary. "The commissioners elect shall be qualified before the clerk of the superior court by taking the several oaths of office, and shall thereupon organize by electing one of their number chairman and proceed to qualify the other officers elected in the county and take the several bonds prescribed by law." Bat: Rev. ch. 52, § 23.

The commissioners have power " to qualify and induct into office, at the annual meeting on the first Monday in September" (since changed to December) "after a general election, or at any time when a vacancy in any of the county offices shall be filled, the clerk of the superior court, the sheriff, the county treasurer, * * * and to take and approve the official bonds of the said county officers," &c. Bat. Rev. ch. 27, § 8. "Every vacancy occurring in any of the offices provided for in art. VII. of the constitution of North Carolina shall be filled, unless otherwise provided, by a majority of the board of county commissioners of the county in which such vacancy may occur." Bat. Rev., ch. 27, § 29.

In the year 1874 an act was passed directing the elections for county commissioners and county officers to be held on Tuesday next after the first Monday in November, and the newly elected officers for that year to meet and qualify on the first Monday in December thereafter, and by section 6 declares "that all officers whose terms of office would expire did the election occur on the first Thursday in August, 1876, are hereby authorized and directed to hold over in the same until their successors in office are elected and qualified under this act." Acts of 1874–'75, ch. 237. While the act expressly directs the new commissioners just admitted to office to proceed to induct the other county officers into their

several offices, to which they shall be found to have been elected, it does not follow that if from any cause the new commissioners themselves fail to qualify there is no competent authority left in the old board to qualify those other county officers, and they are to be deprived of the benefits of the election and the public of their services. The command to the new commissioners presupposes their accession to the office and the retirement of the old, and attaches to the office itself, whoever may be the incumbents for the time being, constituting the body corporate, and it was equally the right and duty of those holding over under the statute until their successors took their places to exercise to the fullest extent for the public good all the appropriate functions of office. The law does not intend an *inter regnum,* or interval, when those functions are in abeyance. The powers and duties of the board of county commissioners are large and varied, involving county government itself, and their suspension would produce the most serious consequences. Let us suppose, not an uncommon occurrence, a controversy between contesting claimants, passing into judicial litigation and protracted by delays incident to judicial procedure, over a long period of time before a final determination is reached. During this time, in a personal controversy as to the rights of rival claimants, are no county taxes to be levied, no lists made out for the collection of state and county taxes, no county officers to act and thus county government become itself paralyzed because a new board has not been organized to ascertain the result of the election and accept the official bonds of such as are elected ? A doctrine leading to such consequences cannot be sound, and hence it has long been settled that the acts of *de facto* officers have the same validity in reference to third persons whether rightfully or wrongfully in possession of office. It is only necessary to refer to a single case in our own reports, where the

whole subject is fully examined and discussed.   *Norfleet* v. *Staton*, 73 N. C., 546.

Under an act of the general assembly (afterwards declared unconstitutional in *Cloud* v. *Wilson*, 72 N. C., 155,) Hillard was elected judge of the second judicial district for the residue of an unexpired term to which Moore had been previously appointed by the governor, and proceeded to hold the several superior courts therein.   While thus acting in his official capacity he appointed the defendant clerk of the superior court of Edgecombe.   After the decision was made, Moore resumed possession of his office from which he had been temporarily displaced, and disregarding the appointment of Staton, appointed the relator as clerk.   It was held that the defendant was rightfully in office, and there was no vacancy to be filled.   We are unable to discover any facts in the present case to distinguish it from the one then before the court, and it is in our opinion decisive.

The second enquiry is, had the board at the instance of the defendant a right to postpone final action until the 21st day of December, in passing upon his qualification, and upon his failure *then to tender* a satisfactory bond, to declare the vacancy and fill it?   We have decided at the present term, in *Buckman* v. *Com'rs of Beaufort, ante,* 121, that the board had the power for sufficient reasons to extend the time for giving an official bond, and then to accept it and induct the person elect into office.   If they could do this, they have equal capacity upon his failure to appoint and put another in his place.   Public policy requires as well as the law that all persons elected or appointed to office should be qualified as soon as they reasonably can be, but this duty neglected or deferred beyond a prescribed time, does not for this delay cease to be of binding obligation and take from the commissioners all legal ability to perform it afterwards. The time was not so unreasonable as to work a forfeiture of the office, and take from the commissioners all further

power of action. Certainly the defendant cannot complain of what was done upon his own application and for his exclusive personal benefit.

. We have not considered the proceedings of the three imprisoned commissioners at the public jail, because they do not in our view affect the point in controversy and the conclusions at which we have arrived. But the term of office has expired and while the judgment here cannot restore to the relator that to which he was entitled, but which has ceased to exist, it may lay the foundation for damages in another action. C. C. P., § 373.

Error.                                          Reversed.