STATE on the relation of HAMILTON G. EWART v. THOMAS
A. JONES.

*Establishment of Court—Vacancy in Office of Judge—
Appointment by Governor.*

The General Assembly, by Ch. 75, Acts of 1895, establishing a Crim-
inal Court with one Judge, provided that the General Assem-
bly should "elect a person to fill the vacancy in said office,
which shall be caused by the ratification of this Act." The
act was ratified on the 23d of February, 1895, but the election
of plaintiff to fill the office of Judge was not held until the
27th February, 1895. The Governor refused the application
of the plaintiff for a commission as Judge and appointed the
defendant to the office. *Held*, in an action in the nature of a
*quo warranto*, that between the time of the ratification of
the Act and the election of the plaintiff to fill the office no
such vacancy existed as is contemplated in Art. 4, Sec. 25,
and Art. 3, Section 10, of the Constitution. (AVERY, J., con-
curs in the decision of the Court that the plaintiff is entitled
to the office, but dissents from the conclusion that there was
no "vacancy" in the interim between the ratification of the
act and the election of plaintiff.)

ACTION, in the nature of a *quo warranto*, heard upon a
a case agreed, before *Graham, J.*, at March Term, 1895, of
BUNCOMBE Superior Court. There was judgment for the
defendant and plaintiff appealed. The facts appear in the
opinion of FAIRCLOTH, C. J.

*Messrs. F. H. Busbee* and *T. R. Purnell*, for plaintiff
(appellant).
*Messrs. W. W. Jones, F. A. Sondley, Shepherd & Bus-
bee* and *T. F. Davidson*, for defendant.

FAIRCLOTH, C. J.: Under our form of government the
sovereign power resides with the people and is exercised
by their representatives in the General Assembly. The

only limitation upon this power is found in the organic law, as declared by the delegates of the people in Convention assembled from time to time. In the Constitution of 1868 these limitations are found, bearing upon judicial questions, mainly in Article IV ; and in section 4 the judicial power is vested in a Court for the trial of impeachments, a Supreme Court, Superior Courts, Courts of Justices of the Peace and Special Courts, and the power of such Special Courts, as defined in section 19 of the same Article, was declared in *State* v. *Pender*, 66 N. C., 313.

In the same Article, Sec. 31, it was provided that the Governor should fill all vacancies occurring in the offices provided for by this Article of the Constitution "unless otherwise provided for," and it was held by this Court that the words "unless otherwise provided for" meant unless otherwise provided for in this Constitution. In the Constitution of 1868 no Criminal Court, nor any other Court, than those provided in Article IV, Sec. 4, could be established by the Legislature, and it is expressly provided in Article III, Sec. 10, that "the Governor shall appoint all officers whose offices are established by this Constitution, or which shall be created by law, and whose appointments are not otherwise provided for, and no such officer shall be appointed or elected by the General Assembly." Thus it was according to the decisions of this Court cited under the appropriate sections in the present Constitution.

The Convention of 1875 revised and amended the Constitution of 1868 in several respects, and in the following, bearing on the present question :

1. In Article III, Sec. 10—"The Governor shall * * * appoint all officers, whose offices are established by this Constitution, and whose appointments are not otherwise provided for"—omitting the words "and no such officer shall be. appointed or elected by the General Assembly," found in

the corresponding Article and Section of the Constitution of 1868.

2. In Article IV, Section 2—"The judicial power of the State shall be vested in a Court for the trial of impeachments, etc., and such other Courts inferior to the Supreme Court as may be established by law."

3. In Article IV, Section 25—"All vacancies occurring in the offices provided for by this Article of the Constitution shall be filled by the appointments of the Governor, unless otherwise provided for"_____"If any person elected or appointed to any of said offices shall neglect and fail to qualify, such office shall be appointed to, held and filled as provided in cases of vacancies occurring therein."

4. In Article IV, Sec. 30—"In case the General Assembly shall establish other Courts inferior to the Supreme Court, the presiding officers and clerks thereof shall be *elected* in such manner as the General Assembly may from time to time prescribe, and they shall hold their offices for a term not exceeding eight years."

Upon this last section 30, the plaintiff's right to the office sued for depends.

From this review we find that under the Constitution of 1868 the Governor filled all vacancies provided for therein not otherwise provided for, and that no such officer could be appointed or elected by the General Assembly, and that the Legislature had no power to establish other Courts. And we find in the Constitution of 1875, Section 30, *supra*, that the Legislature is invested with power to establish other Courts inferior to the Supreme Court and to prescribe the manner of electing the presiding officers and clerks thereof, and this power excludes any authority in the Executive to fill such an office under the provisions of the Constitution to fill vacancies. This seems to be the plain and natural meaning of the language of Sections 30, 31, and

other sections. In further support of such construction and of the intention, we were furnished with the Convention Journal of 1875, pages 175, 176, showing by a direct vote that the Convention refused to incorporate the words "and no such officer shall be appointed or elected by the General Assembly," as it was in Section 4 of the Constitution of 1868. The intent of the Convention in making those changes is too plain to require further comment.

The General Assembly, Act 1895, Ch. 75, in pursuance of Article IV, Sec. 30, *supra*, established a Criminal Circuit, composed of Buncombe, Madison, Haywood and Henderson counties, providing for one Judge and prescribing the powers, jurisdiction, &c., of said Court. Section 7— " That such Judge may be removed from office for the same causes and in the same manner as a judge of the Superior Court, and all vacancies in said office shall be filled by appointment of the Governor, and the person so appointed by the Governor shall hold his office until the next general election, provided that the General Assembly now in session shall elect a person to fill the vacancy in said office, which will be caused by the ratification of this act. Ratified Feb. 23, 1895."

On February 27, 1895, the Legislature elected the plaintiff, by the requisite majority, a Judge of said Criminal Circuit to fill the office as provided in said act. On March 12 following the plaintiff applied to the Governor for his commission, which was refused, and on the next day the Governor nominated, appointed and commissioned the defendant as Judge of said Criminal Circuit, who is now in possession thereof.

This exercise of power by the Governor was without authority in the Constitution or the Act of Assembly. There was no vacancy in the office, such as is contemplated by the Constitution to be filled by the Governor. There

was in fact no vacancy. It was simply the short interim between the establishment of the office and the election of the person to fill it. Was it necesary for the Legislature to elect the officer in the same breath that created the office, in order to prevent a constitutional vacancy to be filled by the Executive, when the act itself declared the purpose of that body to elect the officer? The question seems to furnish the answer. The fact that the word "vacancy" is used in the proviso does not affect the question. Suppose the Legislature had declared that the interim of four days should or should not be a vacancy, that would not help the matter; for it is not the province of that body to determine the legal effect and consequences of its own action. It is manifest that the purpose was to prevent a constitutional vacancy. The case of *Cloud* v. *Wilson*, 72 N. C., 155, has been invoked on this question. There, D. H. Starbuck had been duly elected Judge of the 8th Judicial District, and after long delay he declined to accept and so notified the Governor. This Court held that to be a vacancy to which the Governor should appoint, *ex necessitate*, as the Legislature was forbidden to fill the place by Article III, Sec. 10, and on the further ground that the public would suffer without a judge for the district. Here, the Legislature had the constitutional power to create the office and fill it, and the plaintiff was ready, and tried to enter promptly. There is no analogy.

Our opinion then is that the plaintiff is entitled to the office sued for, and that the judgment below is erroneous.

Reversed.

AVERY, J. (concurring): The power to fill by appointment all vacancies occurring in the offices provided for by the Article devoted to the Judicial Department was conferred upon the Governor of the State, both by Section 31

of Article IV of the Constitution of 1868, and by that section as amended by the Constitutional Convention of 1875 (Const., Art. IV, Sec. 25) *unless otherwise provided for*. The provisions added to the original section were manifestly made, in view of the decision of this Court in *Cloud* v. *Wilson*, 72 N. C., 155, and were intended to limit the tenure of the appointees of the Chief Executive, whether to fill a vacancy caused by the death or resignation of an incumbent, or by the refusal of a person elected to qualify, to the time intervening between the making of the appointment and the next regular election for members of the General Assembly, together with a reasonable interval for qualification.

The Constitution as amended in 1875 added to the list of tribunals, to which the Judicial power of the State was delegated, in addition to Superior Courts and Courts of Justices of the Peace, "such other Courts inferior to the Supreme Court as might (may) be established by law." After giving to the Legislature, in Section 12, Art. IV, the power to allot and distribute the jurisdiction not pertaining to the Supreme Court amongst the Courts established or which might be established by law, the Convention of 1875 made a specific provision for filling the office of Judge of any new tribunal which might be created by the Legislature in pursuance of Section 30, Art. IV, upon the construction of which this controversy mainly depends, and which is as follows:

"In case the General Assembly shall establish other Courts inferior to the Supreme Court, the presiding officers and clerks thereof shall be elected in such manner as the General Assembly may from time to time prescribe, and they shall hold their offices for a term not exceeding eight years."

The office of Judge of "the Criminal Court of Buncombe,

EWART v. JONES.

Madison, Henderson and Haywood Counties" is the subject matter of this controversy, and was created by a statute (Laws 1895, Ch. 75) ratified February 23, 1895. It is provided in section 7 of the Act that an election shall be held for the first full term of four years at the next general election, and that vacancies in the office shall be filled by the Governor, subject to the condition however "that the General Assembly now in session shall elect a person to fill the vacancy in said office, which shall be caused by the ratification of this Act," and that "said person shall hold his office until his successor shall be elected by the qualified voters of said counties of Buncombe, Madison, Haywood and Henderson at the next general election, and the person so elected shall hold his term of office as provided in section 6" (for a term of four years).

On the 27th of February, 1895, the General Assembly proceeded to elect a person to fill the office till the next general election, and the relator Ewart received the requisite majority of both houses. The Governor subsequently sent the name of the defendant Jones to the Senate for confirmation, and on failure of that body to act on his recommendation, issued a commission to the defendant and by virtue of this appointment he is the present incumbent.

The right of the Governor to exercise the power of appointment conferred by Section 25, Art. IV, is contingent upon the occurrence of a vacancy and the absence of any other express provision for filling it. Conceding that a vacancy occurred immediately on the ratification of the Act, on February 23, and existed at least till February the 27th, the controversy is narrowed down to the point whether the General Assembly was vested with authority to provide by the Act that such vacancy should be filled by the subsequent election during the same session. The warrant of authority for electing the relator is to be found, as

his counsel contend, in the provision of Section 30, Art. IV, of the Constitution, that the "presiding officer and clerk shall be elected in such manner as the General Assembly may from time to time prescribe." The Constitutional amendments, made in 1875, were ratified by the people in 1876 and took effect in accordance with the ordinance of the Convention on the 1st day of January, 1877. On the 10th day of the following March, a Criminal Court for Wake County was created by statute, and it was provided in sections 6, 9 and 11 of the Act (Laws 1876-'77, Ch. 271) that the Judge, Solicitor and Clerk should be elected by the General Assembly.

In the case of *Bunting* v. *Gales*, 77 N. C., 283, brought by the Clerk of the Superior Court to test the right of the clerk of the new Criminal Court, elected by the Legislature, to take from the plaintiff the emoluments enuring to the former from the criminal business theretofore cognizable exclusively in the Superior Court, it was held that the act establishing the tribunal was constitutional and that the plaintiff accepted his office in contemplation of the legislative authority, under Section 19, Art. IV, of the Constitution of 1868, authorizing the creation of special courts, to diminish its emoluments as an incident to the transfer of the criminal business to any other court, which it had the power to create. The Court said : "He (Bunting) took his office therefore with a knowledge that the Legislature might establish a Criminal Court substantially the same with that which they did establish by the Act of 1876-'77, Ch. 271, under the amended Constitution and of which they made the defendant Clerk." The authority of the Legislature of 1876-'77 to elect a clerk was derived, if it existed, from Section 30, Art. IV, of the amended Constitution, and could not be sustained without holding by an unavoidable implication that the "presiding officer," whose office

116—37

is coupled with that of clerk in that section, could likewise be rightfully chosen by the same body. While the question was not discussed, yet in order to reach the conclusion announced the Court must have been of opinion, not only that the Legislature had the power to create the Court, but to elect the clerk whose rights to the fees was sustained. If the Legislature of 1876-'77 had the power to elect a clerk, how can it be contended that, in coupling "the presiding officers and clerks," the same authority was not conferred as to the Judge both of that Court and of the Criminal Circuit created by the act of 1895?

It is insisted that the power of appointment is vested in the Governor by Section 10, Art. 3, of the Constitution, which empowers him to "nominate and by and with the advice of the Senate to appoint all officers whose offices are established by this Constitution and *whose appointments* are not otherwise provided for." The Section (Battle's Rev., p. 42, Sec. 10, Art. IV, Const., 1868) for which this was substituted by the Convention of 1875, contained, in addition to what is preserved in the present section, the inhibitory provision that "no such officer shall be appointed or elected by the General Assembly." It was in construing the section, as it then stood and when there was no conflicting provision elsewhere in the instrument, that it was held in *People ex rel Welker* v. *Bledsoe*, 68 N. C., 457; *Nichols* v. *McKee, Ibid,* 429, and *Battle* v. *McIver, Ibid,* 467, that the Legislature was not only not empowered but was expressly prohibited from appointing trustees of the University and the other officers, the validity of whose elections was the question involved in those controversies. Section 13, Article IX, of the Constitution of 1868 was subsequently amended so as to give to the General Assembly power to provide for the election of trustees of the University of North Carolina." After this alteration in the

organic law, an Act (Laws 1873-'74, Ch. 64) was passed empowering both houses of the General Assembly by joint ballot to elect sixty-four trustees of the University, and under its provisions the Legislature proceeded to elect. In *Trustees* v. *McIver*, 72 N. C., 76, Justice BYNUM, in an able opinion delivered for the Court, and Chief Justice PEARSON in a concurring opinion, reached the conclusion, in spite of the prohibitory clause which then remained as a part of Section 10, Art. III, that the amendment of 1873 did provide, within the meaning of the Constitution, another mode of selecting trustees than by appointment by the Governor and that the act of the Legislature, in pursuance of which the trustees were elected, was constitutional.

If the grant of power to the Legislature to provide for electing trustees was properly held to authorize the election by the General Assembly subject to the same qualification ("unless otherwise provided for") which is found in Art. IV, Sec. 25, and despite an additional prohibition against legislative appointment, it would seem unreasonable to allow the same qualification to restrict the delegation of authority, to elect judges, in language equally as clear. The subtle distinction, which counsel contend may be fairly drawn between the grant of the power to provide for the election of an officer and the authority to prescribe the manner of electing him, does not seem to exist, or is entirely immaterial for the purposes of this discussion. The analogy between the cases of *Trustees* v. *McIver* and that at bar is obvious and striking. It must be noted that all of the cases cited from our own reports to sustain the right of the defendant were opinions in support of the executive power of appointment, when the express grant was made to the Governor, and there was no conflicting constitutional provision to bring the qualification into operation.

It is conceded that the Constitution of 1868 vested the general power of appointment to fill vacancies occurring both in judicial and executive offices in the Governor, subject only to any express provisions in the organic law itself for filling them otherwise, and the authority of the Legislature has been extended from time to time since that Constitution was framed, by express delegation of authority as to some of both classes of officers and by removing the express restriction in Article III. But before any such express power was given or limited to the Chief Executive, when by the Constitution as amended in 1835 no express grant of authority to appoint or elect was conferred upon either of the co-ordinate departments, the residuary power of the people to provide for filling offices, already existing, and to create others, was exercised by their representatives in the General Assembly. As an instance of this kind it seems that the General Assembly at its session of 1866-'67, passed an act (Ch. 27) providing for the establishment of a criminal court for the City of Newberne and for the election by the two Houses of a presiding Judge and that in pursuance of the act Judge Green was duly elected, and it is a part of the judicial history of the State that the authority of the Court was recognized by this Court as a part of our judicial system.

By our silence, we must not be understood as conceding the soundness of the legal proposition of counsel that section 37, Article I, of the Constitution was intended as a restriction upon the power of the General Assembly, as the direct representatives of the people. Another construction of the same clause is based upon the idea that the representatives of the people are vested with a delegated authority restricted only to the extent of the express grants in the State Constitution to the other co-ordinate departments and by the authority delegated to the Federal Government.

Under that interpretation "all power not delegated" in the Constitution "remains in the people" to be exercised through their representatives and is not to be considered as in abeyance, so that they cannot be exercised, however urgent the necessity for their exercise for the public benefit, except when the people assemble by their delegates in Convention. I do not decide this interesting question, because it is not essential that we should do so, but we present both sides of it to exclude a conclusion that might be drawn from a failure to notice the contention of counsel.

———

The foregoing opinion was submitted tentatively only as an embodiment of my own views before that of the Court was prepared. It encountered objection on the part of my brethren upon the ground that it conceded the existence of a vacancy between the time when the Act took effect and the election of the relator. It was intended only to admit, for the sake of the argument, that when the Legislature provided for filling "the vacancy in said office, which shall be caused by the ratification of this Act," the construction which they plainly put upon the Constitution might by possibility have been correct, but not that it was an interpretation adopted by the Court. It is entirely unnecessary, in the decision of the points involved in this case, to determine whether a vacancy, within the meaning of Article IV, Sec. 25, for which the Governor can in any event designate the first incumbent, occurred on the ratification of the Act, since every member of the Court concurs·in the view that the Legislature in the exercise of the power granted by Article IV, Sec. 30, had provided otherwise. I deeply regret that the majority of the Court deem it proper to define "a vacancy" when without raising that question we might have had the advantage of entire unanimity in

our opinion, with such additional weight as the fact is generally considered as giving to the deliverances of appellate Courts.   I shall not enter upon the discussion of the soundness of the doctrine that an office can be created and remain unfilled without causing a vacancy.   When that question shall be fairly presented, I shall take occasion to give at length my reasons for dissenting from the views of the majority of the Court.   Meantime, I venture to express my regret that such a barrier to united action has been, as it seems to me, unnecessarily interposed.   Concurring in the conclusion of the Court, I dissent from the proposition that there was no vacancy between the ratification of the act and the election of the relator.