State on relation of JAMES H. WHITE v. THOMAS J. MURRAY.

(Decided March 13, 1900.)

*Quo Warranto—Title to Office of Clerk of the "Western
Criminal District Court" of Madison County—Power
of Appointment—Act of 1899, Chapter 371—The Con-
stitution, Article XIV, Section 7.*

1. Criminal Courts may be established by the Legislature, and Clerks
appointed for them. *Bunting v. Gales,* 77 N. C., 283.

2. Where the office of Clerk for the Criminal Court is created distinct
from that of the Superior Court, there must be a Clerk of each,
as no man can hold two offices. Constitution, Art. XIV, sec. 7.

3. Under the Act of 1899, chap. 371, the Judge of the "Western Crim-
inal District Court" has the power of appointment of the Clerk
*of Madison Criminal Court until the next general election.*

CIVIL ACTION, in the nature of *quo warranto,* to try the
title of defendant to the office of Clerk of Criminal Court of
Madison County, heard before *Coble, J.,* at July Term, 1899,
of MADISON Superior Court.

The plaintiff, as Clerk of the Superior Court of Madison
County, claimed to be entitled *ex officio* to discharge the
duties and receive the emoluments of Clerk of the District
Criminal Court, just as he had done as Clerk of the Circuit
Criminal Court, of Madison County.

WHITE *v.* MURRAY.

The defendant claimed the said office under appointment made by his Honor, Judge Stevens, Judge of the "Western Criminal District Court," by virtue of the Act of 1899, chap. 371, sec. 11.

Jury trial waived, his Honor to try the case and find the facts, which he did as follows:

This cause coming on to be heard at said term, and the counsel for the plaintiff relator and defendant having agreed to waive a jury trial, and that the Court should find the facts, the Court found the following, together with such other facts as are alleged in the complaint and admitted in the answer, to be the facts:

That pursuant to the Constitution and laws of North Carolina, the relator, J. H. White, at a general election duly held on the first Tuesday after the first Monday in November, 1898, was duly elected Clerk of the Superior Court of Madison County.

That said relator duly qualified as Clerk of the said Superior Court on December 5, 1898, for a term of four years, which said term has not yet expired, and filed his bond.

That the said relator at said date, December 5, 1898, entered upon the duties as Clerk *ex officio* of the Circuit Court. He issued capiases, subpœnas, collected costs, kept the records—did everything—kept all the records pertaining to the office of the said Circuit Court, and performed all the duties that were incident to that office. That he continued to act until a demand was made on him, and then he turned it over under protest—that he continued to act as Clerk *ex officio* until the first Tuesday of April, 1899, of the Circuit Court and continued to keep it after the Act of March 3, 1899, was passed.

That the said relator performed such duties as had to be done; continued in charge of the records and turned them over under protest; that he notified the defendant at the time that he, the relator, was rightly entitled to the office. That it was agreed between the plaintiff relator and defendant that said plaintiff relator waived no rights, and turned over the office under protest. That the act was passed March 3, 1899, and the relator turned over the office to the defendant in April, 1899.

That the relator can't state whether as Clerk *ex officio* of the Western Criminal District Court he issued any capiases or subpœnas between March 3, 1899, and the first Tuesday in April, 1899.

That the relator signed the papers which he did issue, J. H. White, Clerk of the Superior Court, *ex officio* Clerk to the Criminal Court.

It was admitted by the relator and defendant that the said relator was a candidate for Clerk of the Superior Court of Madison County at the election in November, 1898, and that on his ticket was printed the words "For Clerk of the Superior Court, James H. White," and that he was duly elected, and that it is admitted that the plaintiff relator was not voted for on any ticket having the words printed, "For Clerk of the Circuit Court of Madison County," and it is further admitted by the said relator that he filed no additional bond as Clerk *ex officio* of the Circuit Court.

The Court found the further facts: That from March 3, 1899, to the first Tuesday in April, 1899, the said relator continued to file capiases and subpœnas as they would be returned from the sheriff, and that he did any and all things that were incident to the office.

Leave was granted by the Attorney-General to bring this action on May 22, 1899.

Conclusion of law:

That the said relator, J. H. White, is not entitled to assume the execution of the duties and functions of the office of Clerk of the "Western Criminal District Court" of Madison County as *ex officio* Clerk.

ALBERT L. COBLE,
*Judge Presiding.*

Judgment rendered in favor of defendant.   Plaintiff excepted, and appealed.

*Messrs. Moody & Welch,* for appellant.
*Mr. J. M. Gudger, Jr.,* for appellee.

CLARK, J.   This case comes within the principle laid down in *Bunting v. Gales,* 77 N. C., 283, which is decisive of this. The plaintiff is Clerk of the Superior Court of Madison County.   When the Criminal Court in said county was first created in 1895 (chap. 75), a separate Clerk might have been created for it.   It in nowise impaired the legislative power that the Legislature forbore to create the office of Clerk of the Criminal Court till 1899 (chap. 371), and in the meantime permitted the Clerk of the Superior Court to discharge the duties of Clerk of the Criminal Court, and receive the emoluments. The Clerk of the Superior Court did not hold the office of Clerk of the Criminal Court, for he could not hold two offices (Constitution, Art. XIV, sec. 7), but he discharged the duties of Clerk of the Criminal Court, of which emoluments he might have been deprived in 1895, till actually deprived of them in 1899.   As was said by RODMAN, J., in *Bunting v. Gales, supra*:   "He took his office with a knowledge that the Legislature might establish a Criminal Court,"

and thus deprive him of the fees of the business transferred to the Criminal Court. "This," as was said in *Caldwell v. Wilson,* 121 N. C., 469, was a condition "assented to by the defendant (here the plaintiff) in his acceptance of the office."

The Legislature could either elect the Clerk of the Criminal Court itself, as in *Bunting v. Gales, supra,* and *Ewart v. Jones,* 116 N. C., 570, or devolve his election upon the people, or other constituency. Constitution, Art. IV, sec. 30. In this act it has chosen to place the election in the people. It could not, under the authority in the Constitution, place the filling of the office in the appointive power of anyone, and this has not been attempted, but it unquestionably had the power to prescribe some method of filling the vacancy until an election could be had—both this original vacancy as well as any which may hereafter occur. In *Ewart v. Jones, supra,* (bottom of p. 572), it is said that, since the amendment to the Constitution, the Governor has no power to fill vacancies in office created by legislative authority, by virtue of constitutional authority, but it is, tacitly at least, recognized in *Cook v. Meares,* 116 N. C., 582, that the Legislature could authorize the Governor to fill vacancies in such offices till an election could be had, and it is expressly so stated in the concurring opinion at p. 589.

If the Legislature could authorize the Governor to fill vacancies by appointment, there is no reason why it can not authorize the Judge of the Criminal Court to fill any vacancies in the clerkships of his court until an election by the people—"at the next general election." Indeed, this is in exact analogy to the Constitution which requires (Art. IV, sec. 16), that the Clerks of the Superior Courts shall be elected by the people, and sec. 29 of the same article which provides that vacancies in the clerkships shall be filled by the

appointment of the Judge. The separate office of Clerk of the Criminal Court having been created by the Act of 1899, as the Legislature had the power to enact, the Clerk of the Superior Court could not thereafter discharge its duty, as he could until it was made into an office.

The presumption is always in favor of the constitutionality of an act of the Legislature. The settled rule is that the courts will hold no statute unconstitutional unless it is clearly and plainly so, *Sutton v. Phillips,* 116 N. C., 502. Besides, the plaintiff must recover on the strength of his own title and not upon the weakness, if there were weakness, in that of the defendant.

The diminution of the plaintiff's emoluments is his only cause of complaint, and that was held constitutional under exactly the same circumstances, in *Bunting v. Gales, supra.* The ruling of Judge Coble is

Affirmed.