The maxim stare decisis discussed.
BROWN, J., dissenting.
This is an action in the nature of a quo warranto to try the title to the office of clerk of the Superior Court of WARREN, and was heard byWebb, J., holding the courts of the Second Judicial District, upon a case agreed, which is in substance as follows: (618)
In November, 1902, W. A. White was elected clerk for four years from 1 December, 1902. He qualified and held the office until September, 1904, when he resigned. The judge of that district then appointed the defendant to the office, in terms providing that he should "fill the unexpired term of W. A. White." The defendant accepted the appointment and qualified by taking the oath and giving an official bond for the term ending the first Monday of December, 1906, at which time *Page 444 
White's term would have expired if he had remained in office. "At the general election held in the county of Warren on 8 November, 1904, for members of the General Assembly, for State, county, and township officers, for members of Congress, and for electors for President and Vice President of the United States, a clerk of the Superior Court for the county of Warren was voted for, and James R. Rodwell, the relator herein, a citizen and resident of said county, received a majority of the votes cast for such officer, and upon a canvass of the votes cast at such election the board of county canvassers of said county did judicially determine and proclaim that the said Rodwell, the relator herein, had received a majority of the votes cast for such office and was elected as such clerk of the Superior Court of Warren. The said Oliver L. Rowland did not participate in or consent to the election of a clerk of the Superior Court for the county of Warren, but contended that no election for clerk of the Superior Court of said county could be held in the year 1904 according to law; and pursuant to such contention, said Rowland, through his attorney, appeared before said canvassing board and objected to the counting of any votes cast for any one for clerk of the Superior Court for said county."
On the first Monday of December, 1904, both relator and defendant tendered their official bonds to the board of commissioners of the (619) county, who accepted the relator's, and rejected the defendant's solely upon the ground that he was no longer entitled to hold said office, and not because the bond was in any respect insufficient. Relator thereupon duly qualified as clerk of the Superior Court "and was declared by said board as inducted into the office." Relator duly demanded the possession of the office, but defendant refused to surrender the same, and still claims said office and is exercising its duties and functions. Relator, having first obtained leave from the Attorney-General, brought this suit to recover the said office. All questions of accounting for fees and emoluments, if relator is adjudged to be entitled to the office, are reserved in the case agreed for future determination. At the hearing the judge gave judgment for defendant. Relator excepted and appealed.
After stating the facts: The question presented in this case is whether the relator was duly chosen to the office of clerk of the Superior Court at the general election held in November, 1904. The defendant contends that he was not, for two reasons: First, because there was no vacancy in the office to be filled at that election, and, second, because *Page 445 
if there was such a vacancy, the Legislature had not made any provision whatever for filling it. The first of these reasons is based necessarily upon the assumption that when Judge Peebles appointed the defendant, Oliver L. Rowland, to fill the vacancy caused by the resignation of the former clerk, W. A. White, the appointment, under the provisions of the Constitution, was for the unexpired term of White, and not merely until some one could be chosen at the next general election to fill the vacancy. The second of the above-stated reasons (620) presupposes that if, by the terms of the Constitution, the defendant held by virtue of the appointment of Judge Peebles only until his successor could be chosen at the next general election, the provision of the Constitution is not self-executing, and no election could be held, although plainly required by the supreme law, without some affirmative action by the Legislature.
In order to test the correctness of the defendant's contention and the validity of his reasons therefor, we are called upon to perform the delicate and often difficult duty of construing the Constitution, for whatever is therein ordained, as we may construe it, becomes the supreme law of the State. The relator of course contends that the vacancy created by the resignation of W. A. White was required to be filled at the general election in 1904, and if there has been no special legislation adequate for the purpose of executing the will of the people, as thus expressed in their Constitution, that instrument itself provides sufficiently for such an election, especially when considered in connection with the general election laws of the State, and is therefore self-executing. We will now examine these several and conflicting views and determine which of them is the correct one.
The Constitution provides in Article IV as follows: Section 16: A clerk of the Superior Court for each county shall be elected by the qualified voters thereof, at the time and in the manner prescribed by law for the election of members of the General Assembly. Section 17: Clerks of the Superior Courts shall hold their offices for four years. Section 24: Sheriffs, coroners, and constables shall be elected by popular vote and shall hold their offices for two years, and "in case of a vacancy existing for any cause in any of the offices created by this section the commissioners for the county may appoint to such office for the unexpired term." Section 28: When the office of justice of the peace (621) shall become vacant otherwise than by expiration of the term, and in case of a failure by the voters of any district to elect, the clerk of the Superior Court for the county shall appoint to fill the vacancy for the unexpired term. Section 29: In case the office of clerk of a Superior Court for a county shall become vacant otherwise than by the expiration *Page 446 
of the term, and in case of a failure by the people to elect, the judge of the Superior Court for the county shall appoint to fill the vacancy until an election can be regularly held.
These extracts from the Constitution will suffice to show what has been ordained with respect to offices, the vacancies in which are not filled by appointment of the Governor. The appointees to vacancies in offices, which are so filled by appointment of the Governor, hold their places by the express provisions of section 25 until the next regular election for members of the General Assembly, when elections are required to be held to fill such offices. Indeed, it is suggested that this provision of section 25 Article IV extends to all offices created by that article, when the term of the appointee to a vacancy is not otherwise expressly and definitely fixed, if the words "unless otherwise provided for" are understood as referring only to the method of appointment, and not as excepting vacancies not filled by the appointment of the Governor from the operation of that section, and the words "appointees" in the next line as embracing, not only those who have received their appointment from the Governor, but also those whose appointments may have emanated from some other source designated in that article. We express no opinion as to the meaning of that section, preferring not to rest our decision upon its construction, as we think the case can well be decided without any reference to it, although if the construction which has been suggested were adopted the case would necessarily be decided against the (622) respondent, as we would then have a direct and unequivocal command that the election to fill a vacancy in the office of clerk shall be held at the next regular election for members of the General Assembly after the vacancy occurred. We have referred to that section only for the purpose of emphasizing the leading idea of the Constitution of 1868, as amended by the Convention in 1875, that appointees to elective offices should not hold their places any longer than is required for the people again to exercise their right of choosing such officers at the polls, and that they should be permitted to do so at the earliest opportunity that can be afforded for that purpose. This intent pervades the entire instrument, and when, as we shall presently see, the appointee is permitted to hold for the unexpired term, the intention to do so is expressed in plain and unmistakable language, and is confined to those offices the incumbents of which hold for only two years, during which time, under our system of elections, there is no provision for a regular election, and no election can intervene between the occurrence of the vacancy and the next regular election for a full term. We were told by counsel who argued for the relator that there was more reason for preserving the elective feature in filling a vacancy in the office of clerk since than before 1868, *Page 447 
as the clerk, prior thereto, had little or no jurisdiction of any kind and no judicial functions save in the probate of deeds, being merely the hand of the court for registering its orders and decrees and safely keeping its papers and records, while by the Constitution of 1868 he has been invested with very many and important powers and quite an extensive jurisdiction, so to speak, having immediate charge of those particular matters which bring him frequently in close touch with the people, and which affect vitally their most valued interests; that his powers are not simply ministerial, but, within the broad limits of his jurisdiction, he possesses some judicial functions of a very serious nature, (623) and in the exercise of which the citizen is as much concerned as if his office were of a higher dignity. All of this is very true, and should have its proper weight with us in giving our construction to the Constitution. It may also be added to what is thus suggested, that "when the duration of the term of office which is filled by popular election is in doubt or uncertain, the interpretation is to be followed which limits it to the shortest time, and returns to the people at the earliest period the power and authority to refill it." Opinion of the Judges, 114 N.C. at p. 929.
These general observations will perhaps enable us the better to interpret the meaning intended to be conveyed by the sections of the Constitution which we have quoted. Our first inquiry must be, What is meant by the words in section 29, "the judge shall appoint to fill the vacancy until an election can be regularly held"? It must be borne in mind that this is not a provision for choosing an incumbent for the full term, who would, of course, hold until the expiration of that term, but to supply a vacancy by appointment until the people can have an opportunity in the regular way of choosing some one to fill that vacancy. If it was contemplated that the appointee of the judge should hold for the unexpired term, and therefore until the regular election for the full term, it was all-sufficient to provide simply that the judge should appoint to fill the vacancy, for this would have clearly and fully impressed that idea without the use of any words of restriction or limitation. The vacancy, nothing else being said, would comprise all of the time between the appointment and the expiration of the term. But the framers of the Constitution evidently intended that the words "until an election can be regularly held" should apply to an election to be held short of the time when the full term would expire, and to an election which could be held regularly, or, what is the same thing, according to rule or to the manner prescribed by law, whether that law be found in the (624) Constitution or the general statutes relating to elections. It then comes to this: Was there, at the time this election for clerk was held, any *Page 448 
rule or law by which it could be conducted, or, in other words, was there any machinery provided by which an election could be regularly held? We think there was. The Constitution, Art. IV, sec. 16, ordains that a clerk of the Superior Court shall be elected by the qualified voters of the county "at the time and in the manner prescribed by law for election of members of the General Assembly." Here is a plain and adequate method provided for the election of clerks, and indeed the only method. When, therefore, it was ordained that vacancies should be filled by appointment of the judge until an election could be regularly held, it meant necessarily an election held and conducted as pointed out by the Constitution, that is, one held at the time and in the manner prescribed for the election of members of the General Assembly, and that election would, of course, be the next election for such members. Does not such an election fulfill all of the requirements of the Constitution, and is not the procedure thus provided sufficient for the purpose of obtaining a free and full expression of the popular will at the ballotbox? What more was required to be done in order to accomplish that purpose? The Legislature in providing for filling vacancies in some of the executive and in the judicial offices of the State has done no more than has the Constitution in the case of clerks of the Superior courts. It merely provides, as the Constitution does, that the person to fill any such vacancy shall be elected at the same time and in the same manner as members of the General Assembly, that is, at the next general election, as members of the General Assembly are elected every two years. The provision, therefore, is no broader in its scope than that of the Constitution relating to the same matter. Laws 1901, ch. 89, sec. 4 (625) (Election Law). If the Legislature had made provision for an election to fill a vacancy in the office of clerk, it could have done no more than to require that a clerk should be chosen in like manner and under the same rules and regulations as members of the General Assembly at a general election — which, as we have said, is all that it has done in the case of other vacancies. The provision of the Constitution is, therefore, sufficient for the intended purpose, and self-executing, and whenever there is a vacancy in the office of clerk it may be filled at any general election next occurring at which members of the General Assembly are chosen. It is true that Laws 1901, ch. 89, sec. 4, requires that a vacancy in any State, executive, or judicial office must occur more than thirty days before the next election in order that it may be filled at that time, and if we concede that the provision should by analogy apply to vacancies in the office of clerk, it so happens that in this case the office was vacated more than thirty days prior to the general election of 1904.
There are other considerations which lead us to the conclusion that the constitutional provision refers to the next election at which members *Page 449 
of the General Assembly are by law required to be chosen, but it is unnecessary to discuss them here. It will be observed, though, when we read the Constitution, that in every instance where the term of office is only for two years, and there can be no general election before the expiration of the term, it is provided that the appointee to fill a vacancy shall hold for the unexpired term. This is true notably in the case of sheriffs, coroners, constables, and justices of the peace. Const., Art. IV, secs. 24 and 28. But when such an election will by law intervene between the occurrence of the vacancy and the expiration of the term of the next election for the full term, it is provided expressly in the cases of justices of the Supreme Court, judges of the Superior Courts, and solicitors, that the vacancies shall be filled by appointment of the (626) Governor, the appointees to hold until the next regular election for members of the General Assembly, when said vacancy shall be filled by election. (Article IV, sections 21, 23, and 25.) And in respect to vacancies in offices of the State Executive Department, which offices are held for four years, it is provided that if the office of Governor shall become vacant the Lieutenant Governor, who is elected by the people, as the successor to the Governor, shall fill that office; but in case any other office in that department becomes vacant, such as the office of Secretary of State, Auditor, Treasurer, Superintendent of Public Instruction, and Attorney-General, the Governor shall appoint to the vacancy, and the appointee shall hold — at least if the vacancy was caused by death or resignation and not merely by disability of the former incumbent — until the vacancy can be filled at the first general election, the person chosen at said election to hold "for the remainder of the unexpired term." Const., Art. III, secs. 12 and 13.
As the office of a clerk is four years, and a general election may be held under the law after a vacancy has occurred and before the expiration of the term, we do not see how we can escape the conclusion that it was intended by the words in section 29 of Article IV of the Constitution, namely, "the judge shall appoint to fill the vacancy until an election can be regularly held," that the vacancy should be filled at the next election at which members of the General Assembly are chosen.
The counsel for the respondent contend that Cloud v. Wilson, 72 N.C. 155, is an authority against the conclusion we have reached. We do not concur in this view. The language there under consideration was different from that we are now construing. It would be useless to review that case at any length to ascertain if what is there said conflicts with our understanding of the true meaning of the clause of the Constitution which was then construed. It is sufficient to say that the Court inCloud v. Wilson laid great stress upon the fact that judges of the Superior Court had been divided into classes by the Constitution (627) *Page 450 
and that a decision in favor of the respondent might produce great confusion in that classification; and, besides, the decision is based in part upon what we conceive now to have been an erroneous assumption, namely, that if a judge should be chosen to fill a vacancy at the next election he would hold for a full term, and not merely for the unexpired term, and consequently the classification made by the Constitution would be disturbed. We believe the great weight of authority is to the effect that a person so elected will hold only for the unexpired term, and this view of the law we deem to be more consonant with reason than the other. Opinion ofthe Judges, 114 N.C. 925.
It is not our purpose to overrule Cloud v. Wilson, supra, for the decision of the case at bar, when rested upon the principles and reasons stated herein, does not require it. We do not agree with all that is therein said by the Court, and it remains to be stated that the Convention of 1875 seems to have thought that the Court had not construed the Constitution according to its spirit and the intention of its framers, for it amended the section then under consideration so as to require all vacancies in the office of judge of the Superior Court to be filled, first, by appointment of the Governor, and, afterwards, at the next election by the people for the unexpired term. This is in accordance with the true principle of our Government, that the people should have the power and the right to determine how and by whom they shall be governed; and this includes the right not only to select their officers originally, but to do so as soon as it can conveniently be done, when any of the offices become vacant, and it can be done regularly, that is, with due regard for the forms of the law and the requisite procedure; and we should not be too strict and technical in our interpretation of the Constitution, lest (628) we thereby unduly deprive them of this natural and fundamental right, but, on the contrary, we should be liberal in our construction, with the view of preserving that right to the people unimpaired and undiminished, except in so far as the exigencies of the case may require a temporary filling of the vacancy by appointment.
We have not adverted to the fact that section 28, relating to a vacancy in the office of justice of the peace, and section 29, relating to a vacancy in the office of clerk, are identical in language, except that in the former instance the vacancy is filled "for the unexpired term," while in the latter it is filled "until an election can be regularly held." This change in phraseology was not accidental, but it was intended, we think, that the concluding words of the two sections should have different meanings, and for the very reasons we have already given, that in the case of the justice an election would not be held, whereas in that of the clerk one would be held, before the expiration of the term. *Page 451 
We are not without strong authority to sustain our conclusion. InS. v. Johns, 3 Or. 533, the provision of the Constitution which the Court construed was that the Governor should fill the vacancy by appointment, which should expire when a successor shall have been elected. It was contended that the appointee held until the next regular election for the full term, but the Court decided that the vacancy should be filled at the next general election. In a well-considered and able opinion the Court, among other things, says: "It is not reasonable to presume that, where the people have reserved to themselves the appointment of an officer, they would confer on the Executive the filling of a vacancy in the office which would extend the time of the appointee beyond a general election and deprive the whole people of a county from electing their own local officer when they could fill it as (629) conveniently as they appointed the original incumbent. It is a political axiom that when an office becomes vacant the power that made the office can fill it again. If the people have surrendered that power, it should be by express and unequivocal words. The words are: `The Governor may fill the vacancy until a successor is elected.' Vacancy in an office means the want of an incumbent at the time. It has no reference to duration of time, and the appointment of a person to fill a vacancypro tempore does not invest him with a full term unless the law so expressly provides. Vacancy in an office is one thing, and term is another." So in S. v. Conrades, 45 Mo., in construing words substantially similar to those used in our Constitution, the Court says: "The act of 1864 was a limitation on this power of appointment and abridged its exercise to the next regular election. It is insisted now that in passing this law the Legislature meant that the executive appointee should continue to hold his office till the next regular election of county judges, and that the act had exclusive reference to that election. But this construction, we think, is founded in misconception and is not maintainable. It was the obvious intention to give the people an opportunity to elect this officer at the earliest practicable moment, without incurring the expense of a special election. When applied to elections, the terms `regular' and `general' have been used interchangeably and synonymously. The word `regular' is used in reference to the general election occurring throughout the State." Construing a clause of the Constitution which provided that the appointment by the Governor to fill a vacancy should be until the next election, the Court in Weeks v. Gamble, 13 Fla. 9, said it is plain that the election contemplated is the next election after the vacancy, and not the election which is to be held to fill a new term. It is an election to fill the balance of the unexpired term, and not an election to fill the full term, which takes place, without reference to the vacancy, under a law having nothing to do with the (630) *Page 452 
subject of vacancies. The power to fill the unexpired term is a part of the original power of the people to select. It is therein declared that a construction which would postpone the election to fill the vacancy beyond the time appointed by law for holding the next general election would be inconsistent with the true spirit and intent of the Constitution and opposed to the fundamental and vital principles of republican government. To the same effect are Taggart v. State, 49 Ind. 42; S. v. Lansing,46 Neb. 514; Rice v. Stevens, 25 Kan. 302; S. v. Orvis, 20 Wis. 248; Op. ofJudges, 25 Fla. 426; People v. Mott, 3 Cal. 502; S. v. Cowles,13 N.Y., 350; S. v. Thayer, 31 Neb. 82, and S. v. Mechem, 31 Kan. 435, in which the Court says: "It is the general policy of the Constitution that the people elect the officers. The theory of our law is that officers shall be elected whenever it can conveniently be done, and that appointments to office will be tolerated only in exceptional cases." It is further said to have been decided in Rice v. Stevens, supra, that "the appointee by the board of county commissioners to fill a vacancy caused by the resignation of a county clerk would hold his office under the appointment only until the next general election," and the same rule was applied to the case then under consideration, as the language to be construed was the same.
In the people resides the right of selecting their officers, and the appointing power should not be permitted to extend in its operations beyond the particular exigencies and requirements of the case: Appointment is a temporary expedient devised to keep the office filled until the people have the first opportunity to exercise the right to fill it, which must needs be at the next general election, and this right should not be abridged by any construction which postpones its exercise to the (631) election for the next term.
We have already shown that an appointee to a vacancy does not hold for a full term, and it hardly requires argument or the citation of authority to show that section 17 of Article IV of the Constitution, so far as it fixes the duration of a full term, has no bearing upon the question of filling a vacancy, but is quite foreign thereto. Haggarty v. Arnold, 13 Kansas, 367. The decision of this case, as to the time of filling a vacancy, must turn upon the construction of those sections of the Constitution relating strictly to vacancies. If an election at which members of the General Assembly were chosen, and the machinery of which was all-sufficient for a fair and free expression of the popular choice, was not one regularly held within the meaning and intent of the Constitution, we cannot imagine what more was required to make it so. The leading idea in the use of the words "until an election can be regularly held" was to give the people the chance to fill the vacancy just as soon as an election should occur, which would be held and conducted *Page 453 
according to the requirement of section 16, namely, "at the time and in the manner prescribed by law for the election of members of the General Assembly." Any other construction would be strained and unreasonable and deprive the people unnecessarily of the constitutional right to choose their officers. Suppose the Legislature had omitted to provide for filling vacancies in the offices of the Judicial Department, could it be said that the people had no power to elect and that the appointees must hold over, although the Constitution positively requires that such vacancies shall be filled at the next regular election for members of the General Assembly? We think not; and yet there is no substantial difference between the supposed case and the one now under consideration. The Constitution in both cases prescribes the method of filling offices by election, and there is no sound reason why the same method should not apply to filling vacancies. Mechem on Public Office and Officers, (632) sec. 183.
We will next consider the contention that there has been no legislation providing for an election to fill a vacancy in the office of clerk. This question has received some attention in what we have already said. It certainly is not absolutely necessary that there should be any special legislation upon the subject, if the Constitution furnishes sufficient machinery in itself or in connection with the general election laws to secure a fair election. The failure of the Legislature to act in obedience to the Constitution in the particular case, if it be requisite that it should act, cannot be permitted to defeat the right of the people to elect their officers, provided the machinery is otherwise sufficient for the purpose of affording them that right. The principle herein asserted that the Constitution is self-executing and that its provisions, if not in themselves sufficient for the purpose of holding an election at which the people may choose their clerk (and we have shown that they are), may be supplemented by such parts of the general election law as are applicable to the election of clerks at regular or stated intervals or of members of the General Assembly, and that an election held in substantial accordance with such law will be valid, is fully sustained in an able opinion by JudgeBrewer (now a justice of the Supreme Court of the United States) in S. v.Thoman, 10 Kansas, 191. Referring to the same subject, Judge Cooley says: "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced." Cooley Const. Lim. (7 Ed.), 121. The rule supplied in our case is that furnished by the law for the election of members of the General Assembly. A learned and exhaustive discussion of this question will be found in S. v. Burbridge, 24 Fla. 112, where it is held that, whenever a *Page 454 
(633) power is given by law, everything necessary to the effectual execution of the power is given by implication, and therefore the failure of a statute to declare the mode of proceeding at an election ordered by it does not defeat its purpose; and further, that it is the duty of a court to sustain an election authorized by law if it has been so conducted, according to the general law, as to give a free and fair expression to the popular will, and so that the actual result thereof is clearly ascertained. Likewise, in Wells v. Taylor, 5 Mont. 202, it was held that where the law authorizes an election, even though it be a special one, but provides no method of holding it, the election is good if conducted according to the general law on the subject, whether any reference be made to the general law or not. And this is the general doctrine, says Judge McCrary in his work on Elections (3 Ed.), sec. 161. To the same effect is People v.Dutcher, 56 Ill. 144.
It was contended before us that legislation is required in order to give notice to the voters that a vacancy will be filled at the election. The great weight of authority is directly opposed to this contention. "It has, therefore, been frequently held," says Judge Cooley, "that when a vacancy exists in an office which the law requires shall be filled at the next general election, the time and place of which are fixed, and that notice of the general election shall also specify the vacancy to be filled, an election at that time and place to fill the vacancy will be valid, notwithstanding the notice is not given; and such election cannot be defeated by showing that but a small portion of the electors were actually aware of the vacancy or cast their votes to fill it. But this would not be the case if either the time or the place was not fixed by law, so that notice became essential for that purpose." Cooley, supra, 909. This proposition seems to be well supported by the cases. S. v. Orvis, 20 Wis. 248; People v. Hartwell, 12 Mich. 508; S. v. Cowles, supra;
(634) S. v. Shirving, 19 Neb. 497; S. v. Thayer, supra.
We believe nearly if not quite all of the courts hold that when notice is required by the law, if there has been actual notice of the vacancy and the people have had a fair opportunity to vote, all of which may be indicated by the vote cast, the election will be valid, though formal notice was not given, and even though many refrained from voting because of a difference of opinion as to the true construction of the Constitution in regard to the existence of a vacancy or the time of filling it. Actual knowledge and an opportunity to vote take the place of notice, or are equivalent to it. Mechem, supra, sec. 174; Adsit v. Secy. of State,84 Mich. 420. The right to hold an election is derived from the law, and not from the notice. McCrary, supra, sec. 145. The cases upon this question of notice refer, of course, to statutes *Page 455 
requiring notice to be given or proclamation to be made of the election, and it is said that this notice is in addition to that which the law itself gives by implication when it directs that the election shall be held at a certain time and place. We are not aware of any provision of our law requiring notice to be given of elections held at the regular time in the regular manner.
It does not appear from the case agreed, nor has it been suggested, that the voters of Warren County did not know of the vacancy in the office of clerk, which occurred about two months before the election. It can hardly be supposed that such a change was made in the office of clerk without becoming known almost immediately to the people of the county. There is no presumption against the validity of the election. The presumption, if there is any at all, is the other way. If notice of the vacancy and of the election to fill it was required, we must presume that it was given, in the absence of proof to the contrary. Mechem, supra, sec. 219. The burden rests upon him who assails the validity of the election, and contests the right of (635) him who holds a certificate of election upon the ground of irregularity or of the omission of something directory which should have been done. Mechem, supra, sec. 220. The presumption of validity is strengthened by the requirement of our law that the local board of elections shall judicially determine and declare the result, which was done in this case. Indeed, we do not understand it to be contended that the people had no actual notice that a clerk would be voted for at the election. The whole argument here was addressed to the sole question whether there was any authority conferred by the Constitution or by the statute to hold an election for clerk, and it was not claimed or even suggested that there was any irregularity in the mode of procedure, or that the people did not in fact have a fair opportunity, if they desired, to cast their ballot for some person to fill the vacancy, if there was one.
We must not be understood to mean, by what we have said in this opinion, that there is any inherent reserved power in the people to hold an election to fill an office. It is freely admitted that authority to hold it must be found somewhere, either in the Constitution or in the statute. McCrary,supra, sec. 170. We merely hold that there was such authority to elect a clerk at the general election in 1904.
Our attention has been called to Deloatch v. Rogers, 86 N.C. 357. It seems that the question we are now deciding was involved in that case, and that the Court assumed, upon a state of facts somewhat like those we have in this case, that there was no vacancy to be supplied by a popular election. The matter does not seem to have been contested at all, nor was there the slightest discussion of it nor any citation of authority. *Page 456 
It was simply taken for granted that an appointed clerk held to the end of the term, the main question being whether certain ballots were vitiated under the provision of the statute by reason of the fact that there (636) was on them the name of a person as a candidate for the office of clerk, and the opinion was directed almost solely to the consideration and decision of that question. It is desirable, of course, that there should be a stable and uniform construction of the organic law, but we cannot hold ourselves to be bound by that case to the extent of its laying down a rule to be followed without any inquiry into its correctness. We accept it as an authority but must give it only the weight to which, under the circumstances, it is entitled. In construing the Constitution it is of the utmost importance that we ascertain the true intent of the people who by their delegates ordained it, and no interpretation of it can be said to be settled until it is settled right and in accordance with that intent. If, by inadvertence, we have departed from the real meaning of that instrument, we should return to it at the earliest moment, for, unlike a statute, which is clearly changed if wrongly construed the Constitution is intended to be permanent, and is not so easily amended as to conform to the true will of the people. We must decline to follow Deloatchv. Rogers, though we do so with the greatest reluctance. But it must be done, in order to save to the people the full enjoyment of the elective franchise with which we think they never intended to part. There is no vested right to be injuriously affected by this decision of the Court, and no one not a party to this action is likely to be prejudiced by it in any way. We do not mean to say that the rule stare decisis should not apply to constitutional questions at all. It should perhaps have its proper weight in the decision of those questions as well as others. "The maximstare decisis has greater or less force according to the nature of the question decided; and there are many questions upon which there is no objection to a change of decision other than grows out of those general considerations which favor certainty and stability in the law. These are questions where the decisions did not constitute a business (637) rule and where a change would invalidate no business transaction conducted upon the faith of the first adjudication. As an illustration, take a case involving personal liberty: A party restrained of his liberty claims to be discharged under some constitutional provision; the court erroneously decided against him; the same question arises again. To change such a decision would destroy no rights acquired in the past, if it would only give better protection to rights in the future. The maxim in such a case would be entitled to very little weight, and mere regard for stability ought not to be allowed to prevent a more perfect *Page 457 
administration of justice." Wells on Res Adjudicata and Stare Decisis, pp. 556, 557, citing Kneeland v. Milwaukee, 15 Wis. 691.
It is suggested that in Cloud v. Wilson, supra, the Chief Justice
extended the principle of that case to clerks of the Superior Courts. It is clear that this could not be done. The authorities are all agreed upon this question, and those we will cite emanate from the highest source. "If the construction put by the court of a State upon one of its statutes was not a matter in judgment, if it might have been decided either way without affecting any right brought into question, then, according to the principles of the common law, and opinion on such a question is not a decision. To make it so, there must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties, and decide to whom the property in contestation belongs. And therefore this Court (and other courts organized under the common law) has never held itself bound by any part of an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties." Carroll v. Carroll, 16 How. (U.S.), 287. Chief Justice Marshall, for the Court, says: "It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those (638) expressions are used. If they go beyond the case they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented. The reason of this maxim is obvious. The question actually before the Court is investigated with care and considered in its full extent; other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." Cohens v.Va., 5 Wheat., 39. "More is needful to constitute a precedent than merely that a principle or doctrine is announced within the appropriate limits of a cause. It is a fundamental law that a precedent must be a conclusion, a decision in a cause, and not a process of reasoning, an illustration, or analogy. The reasoning, illustrations, and references contained in the opinion of a court are not authority, not precedent; but only the points arising in the particular case and which are decided by the Court." Wells,supra, pp. 530, 531. These citations will suffice to show that we are no more bound by a mere statement made in Cloud v. Wilson, not necessary to the decision of the case, than if it had not been made at all. It is also argued that the language interpreted in Cloud v. Wilson is identical in meaning with that we are now construing, and for this reason the decision is binding upon us as coming within the maxim, stare decisis. We have already said that the language of the two sections is not the same in meaning. The difference may be thus *Page 458 
illustrated: In Cloud v. Wilson the Court held that the words "regular election" meant a general election as distinguished from a special election, and referred to the next general election of judges. If it had been ordained in the Constitution that vacancies should be filled, first by appointment, and then by a special election to be called by the Governor, this would certainly not have changed the decision in Cloud v. Wilson, as the words were construed to refer to the next general election (639) of judges and would not include a special election; but will any one contend that the words, "until an election can be regularly held," would not refer to such special election? Indeed, in some of the cases it is held that like words, unless restrained by some other language of the Constitution, would authorize the calling of a special election, if the Legislature so provided. The adjective "regular" qualifying the word "election" may well refer to an election held at regular periods for the same office, but the adverb "regularly" qualifies the word "held" and refers not so much to the time as to the manner of holding the election, that is, according to the prescribed method or rule, which in our case is given in section 16. It would be strange indeed if the convention had provided for the filling by election of vacancies in all offices, the terms of which were fixed at four years, and left the important office of clerk of the Superior Court to be filled by appointment for the unexpired term. Such an intention should be most plainly and unmistakably expressed before we adopt it as the true one, for there would be no reason in making such an exception to the general rule. That such was not the intention is clearly manifested by the use of plain and explicit words in sections 24 and 28 when reference is made to an appointment for an unexpired term. The difference in the language employed in the case of judges and in that of clerks, and the language used when an appointment for the whole of the unexpired term was intended, led the members of the Convention of 1875, no doubt, to take the same view of the matter that we do. They did not amend section 29, because they thought it plain enough as it stood and free from all doubt as to its meaning.
We are told that the judges of the Superior Court have in practice adopted a construction different from that we have placed upon the Constitution, and appointed to vacancies for the unexpired term. There is nothing in this record that tends to show such to be the case, but, (640) if it be true, while we have the greatest respect for their opinions, we should not permit such a construction to control us unless it meets with our approval. We must take the responsibility of deciding the question for ourselves, as it has been imposed upon us by the very instruments we are construing. It is our supreme duty to decide correctly, without giving undue weight to extraneous views and opinions, *Page 459 
however much they may be entitled to our respect. We are not aware of the reasons which influenced them, nor do we know to what extent the matter had been considered, and without this knowledge it would not always be safe to follow them, and especially should we not do so when we have no doubt as to the true meaning of the Constitution.
Our conclusion is that the defendant is not entitled to the office of clerk, but that the relator was duly chosen to that office at the election of 1904, and is entitled to exercise its functions and to receive and enjoy its fees and emoluments. The mere fact that the defendant was appointed for the unexpired term can make no difference in the result, The judge could not thus lengthen his term as fixed by the law. Opinion of the Judges,114 N.C. 927.
There was error in the judgment of the court below. Its judgment should have been for the relator instead of for the respondent.
Reversed.